[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10135
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60037-JIC-4


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TROY SIMON,
a.k.a. Sean Robinson,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 24, 2015)

Before TJOFLAT, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Troy Simon, a federal prisoner proceeding *pro se*, appeals the district court's denial of his motions requesting the court to order the Drug Enforcement Agency ("DEA") to return $13,750 it had seized and administratively forfeited.  Mr. Simon argues that the DEA violated his Fourth and Fifth Amendment rights and that the district court wrongly decided it had no authority to review his request.  After careful review, and for the reasons set forth below, we affirm.

## I.    BACKGROUND

On January 23, 2012, when Mr. Simon was arrested in connection with a drug investigation conducted by the DEA and local police officers, federal law enforcement seized $13,750 in United States currency (the "currency") from the vehicle Mr. Simon occupied immediately preceding his arrest.[1]  The DEA field office then prepared and submitted a report, which found there was adequate information to support administrative forfeiture, to the DEA forfeiture office.  The DEA's central office conducted a legal and procedural review and ultimately accepted the forfeiture case.

Pursuant to 19 U.S.C. § 1607(a) and 18 U.S.C. § 983(a), on March 8, 2012, the DEA sent written notice of the currency's seizure by certified mail, with return receipt requested, to Mr. Simon at two locations:  (1) a residence in Lake Worth,

---

[1] In September 2012, Mr. Simon pled guilty to conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846, and illegal entry, in violation of 8 U.S.C. § 1325(a), (b)(2), and is currently serving his sentences.

Florida and (2) the Broward County Sheriff's Office Main Jail, where Mr. Simon was incarcerated. The notice advised Mr. Simon of the seizure, provided instructions and deadlines for contesting the forfeiture, and warned that failure to comply with the procedures listed would result in termination of Mr. Simon's claim to the currency. After sending written notice to Mr. Simon at the jail, the DEA received a return receipt bearing the signature "Sean Robinson,"[2] indicating the date of receipt as March 14, 2012.[3] The DEA also published notice of the seizure in the *Wall Street Journal* for three successive weeks, on March 26, April 2, and April 9, 2012.

By June 7, 2012, the period for filing claims had expired, and the DEA had received no claims to the currency. The DEA therefore executed a Declaration of Forfeiture, stating that pursuant to 19 U.S.C. § 1609, the currency was administratively forfeited to the DEA.

Over a year later, on September 30, 2013, Mr. Simon filed a *pro se* motion in the district court requesting return of the currency. He argued that the currency had been seized without a warrant or probable cause, and law enforcement failed to

---

[2] Sean Robinson is one of Mr. Simon's known aliases. Mr. Simon identified himself to the police as Sean Dale Robinson immediately following his arrest. He then signed the *Miranda* form provided by the police as Sean Robinson. When he was confronted by agents from the U.S. Department of Homeland Security, he admitted that his legal name was Troy Simon, he was a citizen of Jamaica, and he had entered the United States illegally after previously being removed from the country twice. Notice was addressed to "Troy Simon, Prisoner ID # 90120049 aka Sean Dale Robinson and Sean Cordell Robinson."

[3] The notice sent to Lake Worth was returned undelivered. Written notice was sent to other interested individuals, but only Mr. Simon contests the forfeiture.

3

comply with the procedural requirements of 19 U.S.C. §§ 1602-16.  After the government responded but before the district court ruled on his motion, Mr. Simon filed a second motion requesting that the district court review the files and records of seizure under the authority of the Administrative Procedures Act ("APA") and arguing that the government conceded in its response that seizure was not supported by probable cause.

On December 3 and 30, 2013, the district court denied Mr. Simon's motions in two orders.  The district court concluded in the first order that the currency was administratively forfeited, that Mr. Simon received and accepted written notice, and that he waived his right to the currency.  In the second order, the district court noted its jurisdiction was limited to review of whether the government complied with due process by providing appropriate notice under 19 U.S.C. § 983 and reiterated that Mr. Simon received actual notice and failed to file a timely claim. This is Mr. Simon's appeal of the two orders.

## II.    STANDARD OF REVIEW

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  Like the district court below, we liberally construe Mr. Simon's *pro se* pleadings and brief on appeal as seeking relief through: a motion to set aside a non-judicial forfeiture pursuant to 18 U.S.C.

§ 983(e), the district court's exercise of equitable jurisdiction, and review under the APA.[4]  Except for narrow exceptions inapplicable here,[5] federal courts lack jurisdiction to review the merits of administrative forfeiture decisions but may "determin[e] whether the agency followed the proper procedural safeguards." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005) (internal quotation marks omitted).  We review *de novo* a district court's subject matter jurisdiction and its decision whether to exercise equitable jurisdiction.  *Id.*

## III.    DISCUSSION

Our review is limited to the government's compliance with the applicable procedural safeguards.  *See id.* at 1196.  Thus, although Mr. Simon argues that his Fourth Amendment rights were violated because the government failed to establish probable cause and obtain a warrant to seize the currency, we, like the district

---

[4] Mr. Simon does not argue for return of the currency under Federal Rule of Procedure 41(g), but even if we construe his pleadings liberally as such, a Rule 41(g) motion would be improper here.  Relief under a Rule 41(g) motion, the denial of which we review *de novo* as to law and clear error as to factual findings, *United States v. Howell*, 425 F.3d 971, 973 (11th Cir. 2005), is not available when property has been retained pursuant to a civil forfeiture statute rather than as evidence.  *See United States v. Watkins*, 120 F.3d 254, 255 (11th Cir. 1997) (per curiam) (holding Rule 41(e), the predecessor to Rule 41(g), does not apply to civil forfeiture actions).  "When the government, in its written response to a Rule 41(e) motion, admits its position is that, by forfeiture, the movant has already permanently lost his right to the pertinent property, the government's judicial admission is enough to deprive the court of the authority to grant the Rule 41(e) motion."  *Id.* at 255.  Here, even without a formal written response to a specific Rule 41(g) motion, it is clear the government's position in this case is that the currency was lost through forfeiture.

[5] The narrow exceptions are: first, a federal court may exercise jurisdiction when the agency does not consider a request that it exercise its discretion, *United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1999) (per curiam), and second, a federal court may exercise equitable jurisdiction over an agency's forfeiture decision, but "only when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice.  *Id.*

5

court, lack jurisdiction to consider these arguments because they go to the underlying merits of the administrative forfeiture.

Money derived from illegal drug transactions is subject to administrative forfeiture, 21 U.S.C. § 881(a)(6), which is governed by procedural rules delineated in 18 U.S.C. § 983, and, where not inconsistent, by the customs laws of 19 U.S.C. §§ 1602-16a. Further, because the DEA initiated forfeiture of Mr. Simon's currency after August 23, 2000, the date on which the Civil Asset Forfeiture Reform Act ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, *codified in part at* 18 U.S.C. § 983, became effective, CAFRA applies. *See Mesa Valderrama*, 417 F.3d at 1195. In accordance with these governing procedures, following any seizure of property for administrative forfeiture, the government must provide notice by publication and written notice to parties that might have an interest in the subject property. *See* 18 U.S.C. § 983(a); 19 U.S.C. § 1607(a). The government must publish notice of a seizure of property "for at least three successive weeks" in a newspaper of general circulation in the judicial district where the property was seized. 19 U.S.C. § 1607(a); *see* 28 C.F.R. § 8.9(a). The personal written notice must provide information on the applicable procedures and deadlines for filing a claim and must be sent to "each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a); *see* 28 C.F.R. § 8.9(b).

Due process requires that notice be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mesa Valderrama*, 417 F.3d at 1196-97 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Successful actual notice is not required; the government need only prove an attempt to provide actual notice. *Id.* at 1197.  Notice sent to the prison in which an interested person is incarcerated is sufficient to meet due process requirements. *See Dusenbery v. United States*, 534 U.S. 161, 172-73 (2002).

Following notification, a party may challenge the forfeiture by filing a timely claim.  A claim must be made within 35 days of the mailing of personal written notice, or, if the letter is not received, within 30 days after the date of final publication of notice.  18 U.S.C. § 983(a)(2)(B).  If no claim is filed, administrative forfeiture occurs by default, and title in the seized property vests in the United States.

After the deadline for filing a claim has passed, an interest holder has only one mechanism available for return of his property: a motion to set aside a forfeiture declaration.  18 U.S.C. § 983(e)(5); *see also Mesa Valderrama*, 417 F.3d at 1196.  Section 983(e) provides that a person entitled to personal written notice under the statute who does not receive such notice may file a motion to set aside the declaration of forfeiture.  18 U.S.C. § 983(e)(1).

7

The district court correctly concluded that the government satisfied the requirements of § 983 and due process. Simon received actual written notice on March 14, 2012. [6] Notice was sent to and received at the prison where Mr. Simon was incarcerated, which is sufficient to meet the constitutional requirements for notice. *See id.* at 172-73. The notice was addressed to "Troy Simon aka Sean Dale Robinson and Sean Cordell," and the return receipt was signed by "Sean Robinson," which is one of Mr. Simon's known aliases. U.S. D.O.J. D.E.A. Notice Letter to Simon, ECF No. 265-2. The record thus demonstrates that Mr. Simon received actual notice. In addition, the government, as required by § 983, published notice in the *Wall Street Journal* for three consecutive weeks. Legal Notice Attention, *Wall Street Journal*, Mar. 26, 2012, ECF No. 265-4. Mr. Simon's arguments to the contrary notwithstanding, the record conclusively shows that the DEA officials properly reported the seizure and notified the interested parties.

Additionally, Mr. Simon waited over a year before filing his motions to contest the forfeiture, well beyond the 35 day deadline set forth in § 983(a)(2)(B) for contesting the claim after notification. Because Mr. Simon failed to file a timely claim contesting the forfeiture, his exclusive remedy was a motion under § 983(e). But, because he received actual notice of the forfeiture, he is ineligible

---

[6] Mr. Simon had until April 12, 2012 to contest the forfeiture, 35 days from the day the DEA sent written notice, March 8, 2012.

8

for relief under that provision. *See* 18 U.S.C. § 983(e)(1) (providing for a motion to set aside the declaration of forfeiture only where a person entitled to written notice does not receive such notice).

The district court was also correct to conclude that Mr. Simon could not seek review of the underlying administrative forfeiture decision via the APA. The APA waives the government's sovereign immunity against suit and provides jurisdiction over an action if the aggrieved party is seeking "relief other than money damages" and "state[s] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity . . . ." 5 U.S.C. § 702. However, the APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Under § 983(e), CAFRA expressly provides for the "*exclusive* remedy for seeking to set aside a declaration of forfeiture . . . ." 18 U.S.C. § 983(e) (emphasis added); *see also Mesa Valderrama*, 417 F.3d at 1195-96 (holding § 983(e) is the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute). Thus, the only relief available is under § 983(e). *See id.* We are unable to find any civil forfeiture cases governed by CAFRA that provide for judicial review under the APA.[7] The district

---

[7] Although in *Arango v. U.S. Dep't of Treasury*, 115 F.3d 922, 928 (11th Cir. 1997), we reviewed the denial of a petition for return of forfeited property under the APA, 5 U.S.C. § 706(2)(A), that case was decided prior to CAFRA.

9

court did not err in determining that CAFRA applies to prevent review of Mr. Simon's motions under the APA.

The district court properly declined to exercise its equitable jurisdiction to review the DEA's administrative forfeiture decision.  Equitable jurisdiction is "highly discretionary and must be exercised with caution and restraint."  *In re Sixty Seven Thousand Four Hundred Seventy Dollars*, 901 F.2d 1540, 1544 (11th Cir. 1990).   While a court may exercise its equitable jurisdiction if "the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice," *United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1999) (per curiam), Mr. Simon's claim and conduct fail to meet this standard.  Despite Mr. Simon's having received and acknowledged lawful notice that the currency was subject to forfeiture through certified mail, he still failed to pursue a claim until more than a year after the forfeiture.  Where, as here, the petitioner "elected to forego the procedures for pursuing an adequate remedy at law" by failing to contest the forfeiture after receipt of notice, "it is inappropriate for a court to exercise equitable jurisdiction to review the merits of a forfeiture matter ."  *Sixty Seven Thousand Four Hundred Seventy Dollars*, 901 F.3d at 1545.

IV.

For the reasons set forth above, we affirm the district court's denial of Mr.

Simon's two motions seeking to set aside the DEA's administrative forfeiture

decision.

**AFFIRMED.**